IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| 1900 CAPITAL TRUST II, BY U.S. BANK TRUST NATIONAL ASSOCIATION, successor in interest to FEDERAL NATIONAL MORTGAGE ASSOCIATION, | : : : : : : : : : : : : : : : | Civil No. 3:19-CV-1576<br><br>(Judge Mariani)<br><br>(Magistrate Judge Carlson) |
| Plaintiff | | |
| v. | | |
| ANTONELLO BOLDRINI, | | |
| Defendant | | |

## MEMORANDUM OPINION AND ORDER

### I. Factual Background

Antonello Boldrini is an angry man. Boldrini is also a prodigious, but prodigiously unsuccessful, *pro se* litigant in federal court.[1] Boldrini's body of

---

[1] See e.g., Boldrini v. Giovannini, No. 19-1551, 2019 WL 4898474, at *1 (3d Cir. Oct. 4, 2019); Salvati v. Deutsche Bank Nat'l Tr. Co, 758 F. App'x 228, 229 (3d Cir. 2018); Boldrini v. Pega Real Estate Tr., No. 18-2198, 2018 WL 6264374, at *1 (3d Cir. Oct. 1, 2018); Boldrini v. Ammerman, 629 F. App'x 172, 174 (3d Cir. 2015); Boldrini v. Wilson, 609 F. App'x 721, 723 (3d Cir. 2015); Boldrini v. Wilson, 542 F. App'x 152, 153 (3d Cir. 2013); PA v. Boldrini, No. CV 3:19-1401, 2019 WL 5067441, at *1 (M.D. Pa. Oct. 9, 2019); Fed. Nat'l Mortg. Ass'n v. Boldrini, No. CV 18-1959, 2019 WL 4241114, at *1 (M.D. Pa. Sept. 6, 2019); Boldrini v. Wetzel, No. 3:13-CV-2485, 2013 WL 5532880, at *1 (M.D. Pa. Oct. 4, 2013); Boldrini v. Bruno, No. CIV.A. 3:11-1401, 2013 WL 619610, at *1 (M.D. Pa. Feb. 19, 2013).

feckless litigation has been marked by two recurrent themes: First, Boldrini insists, in the absence of any evidence, that "he is the victim of a long-running conspiracy among lawyers, law enforcement, judges and others; a decade ago, said conspiracy resulted in his being 'kidnapped ... for twenty five days under alleged charges'; and he will not tolerate any attempt by the judiciary to 'Obstruct Justice.' " Boldrini v. Giovannini, No. 19-1551, 2019 WL 4898474, at *1 (3d Cir. Oct. 4, 2019). In addition, Boldrini's litigation is marked by a penchant for what Albert Einstein once described as one of the highest forms of human folly: "doing the same thing over and over again and expecting different results." United States v. Bogart, No. 4:12-CV-347, 2014 WL 7507260, at *1 (M.D. Pa. Dec. 8, 2014), report and recommendation adopted, No. 4:12-CV-00347, 2015 WL 136389 (M.D. Pa. Jan. 8, 2015).

So it is in the instant case.

This is at least the third *pro se* lawsuit that Antonello Boldrini has commenced by the filing of a Notice of Removal, which purports to remove a state mortgage foreclosure case into federal court. Boldrini's prior efforts were unavailing. Federal National Mortgage Association v. Boldrini, Civil No. 3:17-CV-2357. Federal National Mortgage Association v. Boldrini, Civil No. 3:18-CV-1959. Undeterred,

Boldrini has now filed the instant removal petition seeking once again to remove this case to federal court.

There are several motions pending in this case. These motions include a motion seeking the recusal of the undersigned. (Doc. 34.) This recusal motion reprises the themes that have, sadly, marked much of Boldrini's past litigation. According to Boldrini's motion, "Carlson [is] part of the 'White Glove Mafia' in having 'interest' against Boldrini." (Doc. 34, at 2). Boldrini suggests that this "Mafia" consists of dozens of state and federal judges, law enforcement officers and government officials. He believes the "Mafia" operates in 15 of Pennsylvania's 67 counties; is active in four states; and has tentacles which reach into sixteen countries, on five continents. (Id., at 6).[2]

The conspiracy alleged by Boldrini—as to which the undersigned is identified as a co-conspirator—while global in its reach, is completely clandestine, yet diabolical in its means and actions, since Boldrini alleges that the conspirators have kidnapped him and killed his spouse. (Id.) On the basis of these assertions and claims, matters which are more imagined than real, Boldrini insists that we are

---

[2] The bizarre nature of Boldrini's allegations is underscored by the recital of the international scope of this conspiracy which concludes enigmatically by stating that its reach also includes "especially on 12/16/2008 CANADA." We have not the slightest idea what Canada did to conspire against Boldrini some eleven years ago in December of 2008.

disqualified from addressing this case. While we feel great empathy for Boldrini, whose life and litigation are driven by things unseen, we also recognize that "a judge 'has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require.'" Conklin v. Warrington Township, 476 F.Supp.2d 458, 463 (M.D. Pa. 2007). Accordingly, for the reasons set forth below the request for recusal must be denied.[3]

## II. Discussion

### A. Recusal Motion–Standard of Review

The legal standards which govern such recusal requests were aptly summarized in Conklin v. Warrington Township, 476 F. Supp. 2d 458 (M.D. Pa. 2007). In terms that are equally applicable here, the court explained that:

> The disqualification standard is set forth in 28 U.S.C. § 455, which provides in pertinent part as follows:

---

[3] We pause to note that Boldrini, who has leveled these grave but frivolous allegations in his motion to recuse, has been notified by the Court on numerous occasions that he was required to submit a brief in support of these claims no later than October 23, 2019. Despite these repeated admonitions Boldrini has neglected to timely file a brief. Therefore, under the rules of this court we are entitled to deem Boldrini to have abandoned this motion. See, e.g., Salkeld v. Tennis, 248 F. App'x 341 (3d Cir.2007) (affirming dismissal of motion under Local Rule 7.5); Booze v. Wetzel, 1:12-CV-1307, 2012 WL 6137561 (M.D. Pa. Nov. 16, 2012) report and recommendation adopted, 1:CV-12-1307, 2012 WL 6138315 (M.D. Pa. Dec. 11, 2012); Breslin v. Dickinson Twp., 1:09–CV–1396, 2011 WL 1577840 (M.D.Pa. Apr.26, 2011).

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party....
>
> Id. Pursuant to the above quoted language, the court must consider whether its rulings and statements objectively produce the appearance of bias against [the plaintiff]. As explained by the Supreme Court, these provisions "require ... 'bias and prejudice' ... to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." Liteky v. United States, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). This objective standard requires recusal when a "reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality." Edelstein v. Wilentz, 812 F.2d 128, 131 (3d Cir.1987) (citing United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir.1983)); see also In re Antar, 71 F.3d 97, 101 (3d Cir.1995). If the record presents a close question, the court must resolve the issue in favor of disqualification. Nichols v. Alley, 71 F.3d 347, 352 (10th Cir.1995).

Id., at 462-63.

It is clear, however, that a party's disappointment with what the party anticipates may be the court's rulings cannot form the basis for recusal. As we have observed:

> The Third Circuit has repeatedly observed that "a party's displeasure with legal rulings does not form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir.2000) (citing In re TMI Litig., 193 F.3d 613, 728 (3d Cir.1999) and Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990)). Subsections 455(a) and (b)(1) require the source of bias to be extrajudicial, that is stemming from a source outside of the proceeding, or of such an intensity as to make a fair trial impossible.

Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253 (3d Cir.1995), cert. denied, 516 U.S. 915, 116 S.Ct. 303, 133 L.Ed.2d 208 (1995). As stated by the Supreme Court:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.
>
> Liteky, 510 U.S. at 555, 114 S.Ct. 1147 (emphasis in original).

Id., at 463.

Furthermore, in assessing recusal requests, courts must remain mindful that, in the hands of some litigants, a recusal motion may simply be a calculated tactical tool designed to avoid the result which the law dictates in a case or attempt to unilaterally choose a new judge. Thus, in every instance:

> [T]he court must consider whether attacks on a judge's impartiality are simply subterfuge to circumvent anticipated adverse rulings. In re Antar, 71 F.3d at 101; Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 162 (3d Cir.1993). Indeed, a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th Cir.2002) (quoting Nichols, 71 F.3d at 351); Cooney v. Booth, 262 F.Supp.2d 494, 508 (E.D.Pa.2003); see

also United States v. Snyder, 235 F.3d 42, 46 n. 1 (1st Cir.2000); Curley v. St. John's University, 7 F.Supp.2d 359, 362 (S.D.N.Y.1998).

Id., at 463.

Moreover, it is clear that a party's use of invective toward the court, or disparagement of the court, cannot create recusal grounds since:

> There is a "well established judicial rejection of a rule that would permit a litigant or attorney to disqualify a judge by criticizing him." United States v. Evans, 262 F.Supp.2d 1292, 1296 (D.Utah 2003) (quoting United States v. Helmsley, 760 F.Supp. 338, 342-43 (S.D.N.Y.1991)). In other words, a litigant cannot unilaterally create the grounds for recusal. See In re Mann, 229 F.3d 657, 658-59 (7th Cir.2000) (filing of judicial misconduct charge in reaction to court's decision insufficient ground for disqualification). As [one court] has observed: "A party cannot cast sinister aspersions, fail to provide a factual basis for those aspersions, and then claim that the judge must disqualify herself because the aspersions, *ex propio vigore,* create a cloud on her impartiality." In re United States, 158 F.3d at 35.

Conklin, 476 F.Supp.2d at 464.

Finally, we note that Boldrini's recusal motion also alludes cryptically to our service more than a decade ago in the United States Attorney's Office. However, it is well-settled that:

> [W]here a recusal request, like this request, is premised upon some prior government service by a judge, such as service as United States Attorney, it is clear that the fact of that prior service, standing alone, does not provide grounds for recusal. Indeed, such a global claim of recusal has long been expressly rejected by the United States Court of Appeals for the Third Circuit, which has held that:

> Since a judge's prior position as a United States Attorney does not require his or her recusal unless the case at issue arose before the judge left that position, see Barry v. United States, 528 F.2d 1094 (7th Cir.), cert. denied, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); In re Grand Jury Investigation, 486 F.2d 1013, 1015–16 & n. 3 (3d Cir.1973), cert. denied, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974), [a judge's] prior [government] position ... could not reasonably be deemed to be a basis to question [the judge's] ability to rule impartially in this case.
>
> Edelstein v. Wilentz 812 F.2d 128, 131 (3d Cir.1987).

Lease v. Fishel, 712 F. Supp. 2d 359, 374 (M.D. Pa. 2010), aff'd, No. 1:07-CV-0003, 2010 WL 4318833 (M.D. Pa. Oct. 22, 2010).

### B. **Boldrini's Recusal Motion Will be Denied**.

Judged against these legal benchmarks, Boldrini's recusal motion will be denied. As we have noted, this motion springs from a longstanding but entirely fanciful and thoroughly debunked notion—the idea that there is some global, decades-spanning international conspiracy known as the "White Glove Mafia," which is utterly clandestine but exists for the sole purpose of tormenting the plaintiff, and the undersigned along with a host of other federal judges is part of this cabal. As we have noted in the past, when addressing a similar, fevered recusal motion premised upon a sweeping, conspiracy theory unadorned by any facts:

> In our view, merely reciting [this] recusal theory refutes it as a ground for recusal under an "objective standard [which] requires recusal when a 'reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality.' " Conklin, 476 F.Supp.2d at 463, quoting, Edelstein v. Wilentz, 812 F.2d 128, 131 (3d Cir.1987).
>
> In truth, [the recusal] motion has the qualities of something imagined, but not real. The cabal he posits is incredible. If real, it would be a scheme which was global in its membership, yet completely clandestine in its activities. Indeed, this alleged scheme would have required thousands of participants, acting in concert for a quarter of a century, with the singular but secret goal of bedeviling [the plaintiff].

Lease v. Fishel, 712 F. Supp. 2d at 376–77.

Simply put, the things that Boldrini imagines do not provide grounds for our recusal. Therefore, recognizing that "a judge 'has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require,'" Conklin v. Warrington Township, 476 F.Supp.2d 458, 463 (M.D. Pa. 2007), we will deny this motion.

An appropriate order follows.


DATED: October 24, 2019

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **1900 CAPITAL TRUST II, BY** | : | Civil No. 3:19-CV-1576 |
| **U.S. BANK TRUST NATIONAL** | : | |
| **ASSOCIATION, successor in** | : | |
| **interest to FEDERAL NATIONAL** | : | (Judge Mariani) |
| **MORTGAGE ASSOCIATION,** | : | |
| | : | |
| **Plaintiff** | : | (Magistrate Judge Carlson) |
| | : | |
| **v.** | : | |
| | : | |
| **ANTONELLO BOLDRINI,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

AND NOW this 24th day of October 2019, for the reasons set forth in the accompanying Memorandum Opinion, IT IS ORDERED that Boldrini's motion for recusal (Doc. 34), is DENIED.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge